Angela CIAGO, individually and on behalf of others similarly situated, Plaintiff,

v.

**AMERIQUEST MORTGAGE COMPANY, Defendant.**

No. 03 Civ. 1742(WCC).

United States District Court, S.D. New York.

Dec. 15, 2003.

Law Office of Dan Getman, New Paltz, NY, Dan Getman, Of Counsel, Attorneys for Plaintiff.

Dorsey & Whitney LLP, New York City, Richard F. Albert, Laura M. Lestrade, Of Counsel.Buchalter Nemer Fields & Younger, Los Angeles, CA, Arthur Chinski, Ruth L. Seroussi, Of Counsel, for Defendant.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Angela Ciago brought this action naming as defendant Ameriquest Mortgage Company ("Ameriquest"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203, 207 *et seq.*, and state law for failure to pay overtime wages. Plaintiff also alleges a claim under New York law for retaliation that allegedly occurred after she complained of age discrimination by defendant.[1] Defendant has moved for an order dismissing the action and compelling arbitration pursuant to sections three and four of the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 3, 4. For the reasons stated hereinafter, the motion is granted.

---

1. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1367(a).

## BACKGROUND

Ameriquest is a residential mortgage lender that has its principal place of business in Orange County, California, and employees located throughout the United States. (Am. Complt. ¶ 14; Wright Aff. ¶ 2.) Plaintiff completed an application for employment with Ameriquest dated December 22, 1998. (Wright Aff., Ex. 1.) On this application, plaintiff signed a statement indicating that she understood future employment would be conditioned upon, *inter alia*, her assent to an arbitration agreement. (*Id.*) Ameriquest later tendered a job offer to plaintiff memorialized in a letter dated January 29, 1999. In the text of this letter, Ameriquest explained once again that plaintiff would be required to sign an arbitration agreement as a condition of employment. (*Id.*, Ex. 2.) When plaintiff started work for Ameriquest in Poughkeepsie, New York on February 1, 1999, she was given the Arbitration Agreement ("Arbitration Agreement" or "Agreement") and other employment-related documents to sign. (Ciago Decl. ¶ 6.) While plaintiff does not deny that she signed the Agreement, she claims that she has no recollection of signing it or of its contents. (*Id.* ¶ 7.) Defendant has provided a copy of the Arbitration Agreement signed by plaintiff. (Wright Aff., Ex. 3.)

The Arbitration Agreement provided for arbitration of "all claims" between the parties except workers' compensation and unemployment claims or claims that Ameriquest might have against plaintiff for unfair competition or theft of trade secrets. (*Id.*) It contained the following provisions regarding notice of claims, forum selection and cost sharing:

> The Company and I agree that the aggrieved party must give written notice of any claim to the other party within one (1) year of the date the aggrieved party first has knowledge of the event giving rise to the claim; otherwise the claim shall be void and deemed waived even if there is a federal or state statute of limitations which would have given more time to pursue the claim. . . .

> If I am or was employed outside the State of California, [the arbitration shall take place] . . . at the Company's headquarters in Orange, California. . . .

> The Company and I shall equally share the fees and costs of the Arbitrator. Each party will deposit funds or other appropriate security for its share of the Arbitrator's fee, in an amount and manner determined by the Arbitrator, 10 days before the first day of hearing. . . .

(*Id.*) The Agreement also contained provisions relating to discovery, the substantive law and procedural rules to govern arbitration and the severability of clauses in the Arbitration Agreement adjudged to be invalid. (*Id.*) Finally, the Arbitration Agreement provided that "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to interpretation, applicability, enforceability or formation of this Agreement. . . ." (*Id.*) Defendant claims that pursuant to the Arbitration Agreement, the Court must dismiss this action in favor of arbitration. Plaintiff contends that the Arbitration Agreement should not be given effect because it is invalid.

## DISCUSSION

The FAA provides, in relevant part: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA manifests "a 'liberal federal policy favoring arbitration agree-

ments.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Therefore, even where an arbitration agreement requires the arbitration of disputes involving a federal statute, the parties to a valid arbitration agreement are compelled to arbitrate " 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum....' " *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The Second Circuit has enumerated the following factors to be considered when deciding whether to compel arbitration: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) whether Congress intended the plaintiff's statutory claims to be nonarbitrable; and (4) if not all claims are arbitrable, the court must determine whether to stay the balance of the proceedings pending arbitration. *See Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir.1998) (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir.1987)); *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 118 (2d Cir.1991). Because the Court concludes that the fourth consideration outlined by the Second Circuit is inapplicable here, we will consider only the first three.

## I. *Whether the Parties Agreed to Arbitrate*

 Whether the parties agreed to arbitrate is determined by state contract law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (noting that state law governs determination of whether parties agreed to arbitrate). *See also* 9 U.S.C. § 2 (an agreement to arbitrate

"shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). Accordingly, an agreement to arbitrate may be set aside if it is unconscionable. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ("[A]pplicable contract defenses, such as ... unconscionability, may be applied to invalidate arbitration agreements."). "A contract or clause is unconscionable when there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Desiderio v. Nat'l Assoc. of Sec. Dealers*, 191 F.3d 198, 207 (2d Cir. 1999) (quoting 8 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS, § 18:9). Under New York law, "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made ...." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 534 N.E.2d 824, 828, 537 N.Y.S.2d 787, 791 (1988). Normally "procedural and substantive unconscionability operate on a 'sliding scale'; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *New York v. Wolowitz*, 96 A.D.2d 47, 68, 468 N.Y.S.2d 131 (2d Dep't 1983). However, "there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone ...." *Gillman*, 73 N.Y.2d at 12, 534 N.E.2d at 829, 537 N.Y.S.2d at 792; *Beletsis v. Credit Suisse First Boston, Corp.*, No. 01 Civ. 6266, 2002 WL 2031610, at *6 (S.D.N.Y. Sept.4, 2002) ("It is true that an overabundance of invalid provisions can void an entire agreement.").

Standing alone, unequal bargaining power will not render an agreement to arbitrate within an employment contract invalid. *Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647 ("Mere inequality in bargaining power... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context ...."); *Hart v. Canadian Imperial Bank of Commerce,* 43 F.Supp.2d 395, 400 (S.D.N.Y. 1999) (Conner, J.). The mere fact that an agreement to arbitrate was required as a condition of employment, or continued employment, also is insufficient to invalidate the provision. *Bailey v. Ameriquest Mortgage Co.,* 346 F.3d 821, 823 (8th Cir.2003) (holding that arbitration agreement identical to the one used here was not unconscionable merely because it was offered on a "take-it-or-leave-it" basis); *Arakawa v. Japan Network Group,* 56 F.Supp.2d 349, 352 (S.D.N.Y.1999).

Plaintiff argues that, despite the provisions in the application and letter alerting her that she would eventually have to sign an Arbitration Agreement, there was procedural unconscionability in this case because a copy of the Agreement was not provided until she had accepted employment with Ameriquest, quit her previous job and reported for her first day of work. (Pl. Mem. Opp. Mot. Dismiss at 10.) According to plaintiff, she lacked a "meaningful choice" because she was in no position at that late date to object to the specific terms of the Arbitration Agreement. (*Id.*) We conclude that plaintiff was not deprived of a "meaningful choice" with respect to the general agreement to arbitrate contained in the Arbitration Agreement because plaintiff was clearly informed on multiple occasions that any future employment would be conditioned upon assent to an arbitration agreement and she signed the Agreement. Furthermore, the possibility of compulsory arbitration must not have been particularly objectionable to plaintiff at the time

of signing since she has no recollection of signing the Agreement or its contents. (Ciago Decl. ¶ 7.) When a party signs a contract they are presumed to have assented to its contents, *Arakawa,* 56 F.Supp.2d at 352, and the presence of unequal bargaining power, by itself, is not enough to invalidate an arbitration provision within an employment contract. *Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647. Here, plaintiff has not asserted that she was coerced or pressured into signing the Agreement without reading it or that the Agreement was induced by fraud or entered into under duress. *Cf. Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 383 (S.D.N.Y.2002) (invalidating an agreement to arbitrate because the plaintiff was given only fifteen minutes to review a fifteen-page document and other high pressure tactics were employed). Indeed, plaintiff specifically acknowledged in the Agreement that she had been given the opportunity to consult counsel and had entered into the Agreement voluntarily. (Wright Aff., Ex. 3.) Therefore, we conclude that plaintiff was not deprived of a meaningful choice with respect to the Arbitration Agreement.

Plaintiff argues that even if we find that she has not established that the Agreement was procedurally unconscionable under these facts, the notice, forum selection, fee splitting and other related provisions are so outrageous as to invalidate the Agreement on the grounds of substantive unconscionability alone. (Pl. Mem. Opp. Mot. Dismiss at 10.) Plaintiff does not cite any cases where substantive unconscionability invalidated a provision in the absence of procedural unconscionability but *Gillman* indicates that it is possible. 73 N.Y.2d at 12, 534 N.E.2d at 829, 537 N.Y.S.2d at 792.

Although the decision was not based on New York law, in *Hooters of America, Inc.*

*v. Phillips* the court struck down an arbitration provision because it adopted arbitration rules "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding." 173 F.3d 933, 938 (4th Cir.1999). The specific provisions in the agreement that were particularly objectionable to the court in *Hooters* involved notice and discovery rules that applied to the employee but not to the employer. The rules also gave the employer, but not the employee, power to cancel the agreement to arbitrate and gave Hooters almost exclusive control over selection of the arbitrators and did not even preclude Hooters from placing its own managers on the arbitral panel. *Id.* at 938–39. The present case is clearly distinguishable from *Hooters* because, in this case, there has been no allegation or indication that the Arbitration Agreement provides for anything but a neutral forum. Under the Agreement the procedural and notice rules apply to both parties equally. The arbitrator is selected from a list prepared by the Arbitration Association of America ("AAA") and each party may strike from the list any of the arbitrators it deems unacceptable. Therefore, we conclude that the provisions that plaintiff argues render the Arbitration Agreement substantively unconscionable in the present case are not so shocking as to bring this matter within the category of the "exceptional cases" alluded to in *Gillman*.[2]

This is not to say, however, that all of the provisions to which plaintiff objects are valid. It is unclear at this point how the arbitrator will interpret the notice, fee splitting and forum selection provisions. Once this Court determines that the parties have agreed to arbitrate, the validity and meaning of specific provisions within the Agreement to arbitrate is a matter for the arbitrator to decide. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (" '[P]rocedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide.") (quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)); *Bailey,* 346 F.3d at 823–24 (holding that the enforceability and effect of a notice provision identical to the one in the present case was an issue for arbitration); *Stewart v. Paul, Hastings, Janofsky & Walker, LLP,* 201 F.Supp.2d 291, 292–93 (S.D.N.Y.2002) (holding that the enforceability of a fee splitting clause in an agreement to arbitrate was a matter for the arbitrator to decide). This Court's review of the Agreement is limited "to certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle,* —— U.S. ——, 123 S.Ct. 2402, 2407, 156 L.Ed.2d 414 (2003). Therefore, once this matter proceeds to arbitration plaintiff will be free to argue that specific provisions in the Arbitration Agreement are unconscionable or otherwise unenforceable. Indeed, the Agreement provides that the arbitrator may hold conferences to deal with pre-

---

**2.** *Jones v. Star Credit Corp.,* decided under New York law, appears to be the type of "exceptional" case alluded to in *Gillman.* In *Star Credit* the installment contract at issue was held unconscionable because it required the plaintiffs, who were poor and on welfare, to pay $900 for a $300 refrigerator. 59 Misc.2d 189, 191–92, 298 N.Y.S.2d 264, 266–67 (N.Y. Sup.Ct. Nassau County 1969). The court was targeting particularly egregious overreaching on the part of "the small but hardy breed of merchants that prey on" underprivileged consumers so it is clear that the court considered a factor normally associated with the procedural unconscionability analysis. However, the court appeared most swayed by the objectionable price term.

hearing disputes by telephone if the arbitrator deems it necessary or appropriate. (Wright Aff., Ex. 3.)

### A. *Waiver of Right to a Jury Trial*

■ Plaintiff further argues that the Arbitration Agreement is void as against public policy because it waives her right to a jury trial without an express clause to that effect. (Pl. Mem. Opp. Mot. Dismiss at 13–14.) She claims that *World Wide Communications, Inc. v. Rozar*, No. 96 Civ. 1056, 1998 WL 386413 (S.D.N.Y. July 10, 1998) ("*Rozar*"), held that "there can be no implicit waiver of jury rights in an arbitration agreement." (Pl. Mem. Opp. Mot. Dismiss at 14.) Plaintiff's reliance on *Rozar*, however, is clearly misplaced because in that case both parties waived the relevant arbitration agreement in favor of action in federal district court. 1998 WL 386413, at *2. Therefore, the issue before the court was whether the arbitration agreement resulted in a waiver of a jury trial when the matter proceeded in the federal courts rather than the arbitral forum. The issue here is whether the parties can invalidate the Arbitration Agreement because it results in an implicit waiver of the right to a jury trial. Under the law of this Circuit, an implicit waiver will not invalidate an arbitration agreement. *Desiderio*, 191 F.3d at 205 ("it is untenable to contend that compulsory arbitration conflicts with the Act's provision for the right to a jury trial"); *Diaz v. Josephthal, Lyon & Ross Inc.*, No. 97 Civ. 4802, 1998 U.S. Dist. LEXIS 22204, at *3–4 (S.D.N.Y. Aug. 26, 1998) (holding arbitration agreement was valid despite the fact that it resulted in an implicit waiver of the right to a jury trial). Accordingly, the Agreement will not be invalidated on this ground.

### II. *Scope of the Arbitration Agreement*

■ "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997) (quoting *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir.1987)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927. In the present case the parties agreed to arbitrate "all claims ('claims'), whether or not arising out of [Plaintiff's] employment (or its termination) .... The claims covered by this agreement include, but are not limited to, claims for wages ... breach of any contract ... tort claims ... claims for discrimination ... and claims for violation of any federal, state, or other governmental law ...." (Wright Aff., Ex. 3.) The Agreement expressly excepts from arbitration workers' compensation claims, unemployment claims and claims that Ameriquest might have against plaintiff for unfair competition or theft of trade secrets. (*Id.*) This provision clearly is broad enough to encompass plaintiff's federal and state law claims for failure to pay overtime wages and alleged retaliatory conduct and we conclude that the claims asserted in plaintiff's Amended Complaint are within the scope of the Arbitration Agreement.

### III. *Arbitrability*

### A. *Whether Congress Mandates a Judicial Forum Under the FLSA*

■ "It is well settled that federal statutory claims can be the subject of arbitration, absent a contrary Congressional intent.... The burden of showing such legislative intent lies with the party opposing arbitration." *Oldroyd*, 134 F.3d at 77

(citations omitted). Plaintiff argues that the Arbitration Agreement is invalid because "an employee cannot be held to have waived a judicial forum as guaranteed by the FLSA." (Pl. Mem. Opp. Mot. Dismiss at 16.) Plaintiff does not, however, point to anything in the text of the FLSA that indicates Congress intended to preclude compulsory arbitration of FLSA claims nor does she establish that there is an "'inherent conflict' between arbitration and the" policies underlying the FLSA. *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647. In *Gilmer* the Supreme Court held that claims under the Age Discrimination and Employment Act ("ADEA") may be subject to compulsory arbitration. *Id.* at 27, 111 S.Ct. 1647. We agree with the view recently set forth by the Fourth Circuit that because of the similar remedial purpose and enforcement mechanisms shared by the ADEA and FLSA, the reasoning in *Gilmer* dictates that claims under the FLSA may also be subject to compulsory arbitration provisions. *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 506 (4th Cir. 2002); *see Bailey,* 346 F.3d at 824 (compelling arbitration of FLSA claims); *Steele v. L.F. Rothschild & Co., Inc.,* 701 F.Supp. 407, 408 (S.D.N.Y.1988) (same).

Plaintiff cites *Barrentine v. Arkansas–Best Freight,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *Tran v. Tran,* 54 F.3d 115 (2d Cir.1995), in support of her contention that FLSA claims are nonarbitrable. In these cases, the Supreme Court and the Second Circuit held that an arbitration provision in a collective bargaining agreement did not preclude an individual union member from bringing a claim against his employer under the FLSA. *Barrentine,* 450 U.S. at 737, 101 S.Ct. 1437; *Tran,* 54 F.3d at 116–17. The present case involves an individual agreement to arbitrate, not a provision within a collective bargaining agreement; it is, therefore, distinguishable from *Barrentine* and *Tran* because different prudential considerations apply to collective bargaining. *See Adkins,* 303 F.3d at 506 (distinguishing *Barrentine* in a case involving an individual agreement to arbitrate because *Barrentine* "was limited to the case of collective-bargaining arbitration and was thus rooted in substantive concerns that simply do not apply" out of the collective bargaining context). Specifically, the Court in *Barrentine* appeared concerned with the fact that the union might not pursue the individual member's FLSA claims through the arbitration process for strategic reasons. 450 U.S. at 742, 101 S.Ct. 1437. This consideration is simply not applicable here. Accordingly, we conclude that Congress has not evinced an intention to preclude arbitration of FLSA claims.

### B. *Notice Provision*

■ Plaintiff argues that this Court should rule the Arbitration Agreement invalid because the notice provision, which purports to require a party to provide notice of a claim against the other party within one year of learning of the event that gave rise to the claim or lose that claim, either amounts to a waiver of, or excessively interferes with, Plaintiff's rights under the FLSA. This argument was recently considered and rejected by the Eighth Circuit in *Bailey,* a case involving an arbitration agreement substantially identical to the one in the present case. 346 F.3d at 823–24. We agree with the Eighth Circuit's position that *PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401, 123 S.Ct. 1531, 1536, 155 L.Ed.2d 578 (2003) is controlling on this point. In *PacifiCare* the district court denied a motion to compel arbitration of claims under RICO because the agreement precluded an award of punitive damages. *Id.,* 123 S.Ct. at 1533. The district court reasoned that the arbitration agreement prevented adequate relief by precluding the treble damages allowed under RICO. The Eleventh Circuit

affirmed. *Id.* The Supreme Court reversed both of the lower courts and held that where it is unclear how the arbitrator will construe the provisions at issue, whether or not a provision in the arbitration agreement infringes upon statutory rights is not a question of arbitrability. *Id.*, 123 S.Ct. at 1536 n. 2. As the Eighth Circuit noted in *Bailey*, the *PacifiCare* decision is evidence of the Court's "confidence that arbitrators are perfectly capable of protecting statutory rights when the parties have conferred the authority to decide statutory claims." *Bailey*, 346 F.3d at 823. It is similarly unclear how an arbitrator will construe the notice provision at issue in the present case. The arbitrator might find that it amounts to an impermissible waiver of plaintiff's FLSA rights or he or she might find that leave may be granted to file late notice. Furthermore, the Arbitration Agreement provides that "[t]he Arbitrator ... shall have exclusive authority to resolve any dispute relating to interpretation, applicability, enforceability or formation of this Agreement ...." (Wright Aff., Ex. 3.) As noted in *Bailey*, this clause "clearly and unmistakably left the" issue of whether the objectionable provisions of the Arbitration Agreement were enforceable for the arbitrator to decide "in the first instance." 346 F.3d at 824 (citing *AT & T Tech. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) and *First Options of Chi.*, 514 U.S. at 944–45, 115 S.Ct. 1920). Accordingly, it is for the arbitrator to construe the notice provision of the Arbitration Agreement and determine whether it impermissibly interferes with plaintiff's federal statutory rights.

#### C. *Discovery*

■ Plaintiff claims that "[c]ompelling arbitration in this case would cripple plaintiff's ability to prove her claim due to the lack of procedural mechanisms to reach testimony of third-parties during arbitration and would be tantamount to extinguishing her statutory rights." (Pl. Mem. Opp. Mot. Dismiss at 22.) In *Gilmer*, the Court held that the fact that a party may have more limited discovery mechanisms available in the arbitral forum is not a sufficient ground to invalidate an agreement to arbitrate. 500 U.S. at 30–31, 111 S.Ct. 1647. The Court reasoned, "Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Id.* at 31, 111 S.Ct. 1647 (quoting *Mitsubishi Motors*, 473 U.S. at 628, 105 S.Ct. 3346). Furthermore, the Arbitration Agreement in the present case allows either party to subpoena witnesses and New York CPLR 3102(e) provides a procedure for compelling deposition testimony from witnesses located in New York for use in an arbitration proceeding pending elsewhere. *See Siegel Practice Commentaries*, McKinney's Cons.Laws of N.Y., Book 7B, CPLR C3102:9 ("The statute is not limited to judicial proceedings and the disclosure is therefore presumably available for use in any kind of proceeding pending elsewhere: administrative, legislative, arbitral ... etc.").

#### D. *Large Arbitration Costs*

■ The Supreme Court has noted, "It may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her statutory rights in the arbitral forum. ... [Nonetheless] [t]he 'risk' that ... [a litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Plaintiff claims that the filing fee for arbi-

334

tration of this dispute could be anywhere between $500–$13,000. (Getman Decl. ¶ 2.) Defendant counters that plaintiff's damages could not conceivably exceed $50,000 and, therefore, the filing fee under the AAA rules would be $750. (Def. Mem. Fur. Supp. Mot. Dismiss at 12.) While we do not reach the issue of plaintiff's damages, it is clear that she will not be required to pay a filing fee anywhere near the $13,000 fee apparently required by the AAA for disputes involving $7 million to $10 million in damages. (Getman Decl., Ex. F.) Plaintiff's claim that the AAA service fee could range from $750–$3,000 is similarly overstated. (*Id.* ¶ 2.) In fact the figures submitted by plaintiff demonstrate that the fee could be as little as $200 and would be $3,000 only if more than $1 million was at issue. (*Id.*, Ex. F.) Furthermore, the AAA rules allow an arbitrator to waive the filing and administrative fees upon a showing of extreme hardship. (Lestrade Decl., Ex. C.) The evidence of arbitrator fees in the range of $2,500 a day that plaintiff purports to glean from published NASD decisions, (Pl. Mem. Opp. Mot. Dismiss at 24), is also too speculative at this point to indicate what costs plaintiff may have to bear in this litigation much less demonstrate that she will be denied any of her statutory rights due to excess costs.[3]

Plaintiff further contends that the arbitration in California will result in $8,000 in traveling costs for her and counsel that she would not have incurred if the matter proceeded before this Court. However, this argument is relevant to the issue of whether the forum selection clause in the Arbitration Agreement is unconscionable, not whether plaintiff is being denied her statutory rights because of excessive arbitration fees. As discussed above, having found

that the parties agreed to arbitrate, decisions regarding the interpretation and enforceability of specific provisions within the Arbitration Agreement are matters for the arbitrator to decide. Accordingly, we conclude that plaintiff has failed to establish that the cost of arbitrating this dispute will "preclude [her] ... from effectively vindicating her statutory rights in the arbitral forum ...." *Green Tree Fin. Corp.*, 531 U.S. at 90, 121 S.Ct. 513.

**E. *Plaintiff's State Law Claims Are Also Arbitrable***

Plaintiff's state law claims are similarly arbitrable. Nothing in New York Labor Law section 663 or New York Human Rights Law section 296, the provisions cited by plaintiff in her Amended Complaint, indicate that the state legislature intended to preclude compulsory arbitration of claims under those provisions. *See Metzler v. Harris Corp.*, No. 00 Civ. 5847, 2001 WL 194911, at *2 (S.D.N.Y. Feb.26, 2001) (compelling arbitration of claims asserted under New York Labor Law).

**CONCLUSION**

For the reasons discussed above, defendant's motion to dismiss this action and compel arbitration pursuant to 9 U.S.C. §§ 3, 4 is granted. The parties are directed to proceed with arbitration forthwith.

SO ORDERED.

---

**3.** Plaintiff has also failed to establish that she will not be able to bear at least some arbitration costs. The evidence indicates that she is a homeowner, owns rental property and has cash reserves. (Ciago Decl. ¶¶ 18, 22.)