**Ann TARULLI Plaintiff**

v.

**CIRCUIT CITY STORES, INC. Defendant**

No. 04 CIV. 427(SCR).

United States District Court, S.D. New York.

Aug. 6, 2004.

Margaret McIntyre, New York, NY, for Plaintiff.

David Wayne Garland, Sills Cummis Radin Tischman Epstein & Gross, P.A., Newark, NJ, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. BACKGROUND:

#### A. PROCEDURAL HISTORY:

On or about January 20, 2004, Ann Tarulli (the "Plaintiff") brought a complaint (the "Complaint") against · Circuit City Stores, Inc. (the "Defendant") alleging that during her employment with the Defendant, as a sales associate at the Circuit City Store in Poughkeepsie, New York from January 1996 until February 2003, she was (a) discriminated against on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), (b) subjected to a hostile work environment on the basis of her gender in violation of Title VII, (c) discriminated against on the basis of age [1] in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (the "ADEA"), (d) subjected to a hostile work environment on the basis of age in violation of the ADEA, and (e) retaliated against for her opposition to the age discrimination in violation of the ADEA. Complaint, ¶ 49–60.[2]

The Defendant has made a motion to compel arbitration and stay proceedings (the "Defendant's Motion") pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"). In support of its motion, the Defendant makes the following arguments: (1) the FAA mandates enforcement of agreements to arbitrate; (2) arbitration agreements between employers and employees are enforced in the same manner as any other agreement to arbitrate; (3) the Plaintiff's arbitration agreement is enforceable under the Second Circuit's standards; and (4) the Defendant's form Dispute Resolution Agreement has been enforced by numerous federal and state courts. Thus, the

---

1. The Plaintiff was born on May 23, 1936.

2. Although not essential to the resolution of this motion, it should be noted that the Plaintiff's claims, for age and gender discrimination, relate to harassment she allegedly received from another Circuit City employee, Adrian Bethea ("Mr. Bethea"), and the Defendant's lack of response to such harassment. Additionally, the Plaintiff contends that she was wrongfully terminated by the Defendant; despite being a top producing sales associate.

Defendant's Motion concludes that the Plaintiff must arbitrate her claims in accordance with the arbitration agreement. The Plaintiff has opposed the Defendant's Motion (the "Plaintiff's Opposition"), arguing that: (A) the arbitration agreement entered into between the Plaintiff and Defendant is both procedurally and substantively unconscionable under New York law; and (B) the unconscionable provisions of the arbitration agreement are not severable from the remainder of the agreement; therefore the entire agreement is unenforceable. The Defendant submitted a reply brief (the "Defendant's Reply"), which counters the Plaintiff's arguments and submits that: (I) the arbitration agreement is neither procedurally nor substantively unconscionable; and (II) even if any provision of the arbitration agreement is deemed unenforceable, that provision is severable and the remainder of the agreement should be enforced. An oral argument on the Defendant's Motion was held before this Court on July 19, 2004.

## B. STATEMENT OF FACTS:

The Plaintiff was hired by the Defendant on or about January 3, 1996 at a job fair sponsored by the Defendant, where she completed an application for employment, a copy of which is attached to the Defendant's Motion as Exhibit 1. In connection with that application, the Plaintiff executed a Circuit City Dispute Resolution Agreement (the "Agreement"). By signing the Agreement, the Plaintiff agreed to the following: (1) to settle all claims arising out of her employment with the Defendant *"exclusively* by final and binding *arbitration*" (Agreement, Page 2 (emphasis in original)); (2) that the claims to be settled through arbitration included claims brought under "federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including amendments of the Civil Rights Act of 1991[3], the Americans with Disabilities Act, and the law of contract and tort." (*Id.*); (3) if the Plaintiff chose to file a lawsuit, the Defendant could use the "Agreement in support of its request to the court to dismiss the lawsuit and require [her] instead to use arbitration." (*Id.*); and (4) that the Plaintiff "must arbitrate all [her] employment-related claims" and could not "file a lawsuit in court." (*Id.*) The Plaintiff signed the Agreement, acknowledging that she had read the Agreement and the *Rules and Procedures of the Agreement* (the "Rules").[4] Further, in the Plaintiff's Op-

---

**3.** As set forth else where in this Memorandum Decision and Order, the Plaintiff's claims are all based upon Title VII and the ADEA.

**4.** It should be noted that the Rules have been modified several times since the Plaintiff signed the Agreement in 1996. The Supplemental Declaration of Teri C. Miles ("Miles Supplemental Declaration"), assistant general counsel for the Defendant, which is attached to the Defendant's Reply as Exhibit A, states that: (1) the Defendant's practice, pursuant to the Rules, is to post in all Circuit City stores a memorandum to all associates describing the changes to the Rules and arbitration program; (Miles Supplemental Declaration at ¶ 6) (2) during her tenure that practice has

been followed in each year where there has been a change to the Rules; (*Id.*) (3) copies of the memoranda posted by the Defendant notifying the associates of changes to the Rules for the years 1998, 1999, 2000, 2001 and 2003 are attached as Exhibit 3; (*Id.* at ¶ 7); and (4) each of the posted memorandas notifies the Associates (a) of the changes to the Rules and (b) that the text of the modifications is available with the Applicant Packets, which are available at all of the Defendant's locations and are available to any employees who want a copy of the Rules. (*Id.*, ¶ 8 and ¶ 9). Based upon the above, the Defendant argues that it was its corporate practice to post notices of modifications and the fact that the Plaintiff chose not to review the modifica-

position, she acknowledges that she understood the section of the application that contained the Agreement. (Plaintiff's Opposition at 2 (citing Plaintiff's Affidavit, ¶ 4)).

The Plaintiff contends that the application packet given to her at the job fair did not include a copy of the Rules, even though the instructions on the application form stated that the applicant should receive and review a copy of the Rules prior to signing the Agreement. Agreement, 2; *see also* Plaintiff's Opposition, 2. However, the application also clearly states that in the event the applicant does not receive a copy of the Rules, he or she must request one. (*Id.*) Further, the application gives the applicant the option of taking up to three days to review the Rules and to withdraw consent to arbitration. (*Id.*). The Plaintiff admits that she never requested a copy of the Rules because she wanted to complete the application that day and she believed the Defendant's representatives were going to make the hiring decisions that day. (Plaintiff's Opposition, 3). The Plaintiff was offered a job and she began work for the Defendant on or about February 25, 1996. The Plaintiff alleges that she never saw a copy of the Rules, which were in effect at the time she signed the Agreement, or any subsequent version of the Rules. (*Id.*) Additionally, she claims that she was never personally notified, verbally or in writing, by the Defendant when modifications were made to the Rules.[5] (*Id.*) Further, she claims that the Defendant never posted information regarding the arbitration procedures, or the modification thereof in the employee break room. (*Id.*) The Plaintiff claims to have carefully reviewed all such postings. (*Id.*)

On or about February 5, 2003, the Plaintiff was informed that her employment was being terminated, effectively immediately. The Defendant asserts that the Plaintiff was terminated because the Defendant was changing its compensation structure to eliminate sales commissions, which the Plaintiff does not dispute. (*Id.* at 6). However, the Plaintiff disputes whether that change was the real reason for her termination. Other sales associates were offered the opportunity to remain employed with the Defendant as "Product Specialists", at an hourly rate, but the Plaintiff was not made such an offer. Complaint, ¶ 34–36. According to the Plaintiff, following the commission restructuring, all of the Product Specialists in the Defendant's Poughkeepsie store were (a) male and (b) younger than the Plaintiff. *Id.* at ¶ 39–40. Of particular concern to the Plaintiff is the fact that her alleged harasser, Mr. Bethea, was offered a position as a Product Specialist. *Id.* at ¶ 43.

Notwithstanding the Agreement, which provides for the arbitration of all employment related claims, the Plaintiff filed the instant lawsuit on or about January 20, 2004. Soon thereafter, the Defendant filed the Defendant's Motion arguing that all of the Plaintiff's claims arise directly out of her employment as a sales associate at the Circuit City store in Poughkeepsie, New

---

tions or did not notice the postings does not create a genuine issue of material fact. (Defendant's Reply, 7).

5. With respect to the alleged modifications, the Defendant submits that the 1995 version of the Rules, which the Plaintiff acknowledged she had reviewed when she signed the Agreement, expressly provided that the Rules could be amended. Specifically, Rule 19 pro-

vided that the Defendant "could alter or terminate the Agreement and these [Rules] on December 31st of any year upon giving 30 calendar days written notice to Associates[.] An Associate shall be deemed to have accepted a modification or termination of the [Agreement] or [Rules] by accepting or continuing employment with Circuit City after receiving notice of such modification or termination."

York; thus, those claims are subject to mandatory arbitration pursuant to the Agreement.

## II. ANALYSIS:

■ The FAA covers arbitration provisions that are contained in employment contracts and arbitration agreements, including the provisions such as those contained in the Agreement relevant to the instant matter. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides for a stay of legal proceedings when the court is satisfied that the issue is arbitrable under an arbitration agreement. 9 U.S.C. § 3; *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir.1987). Section 4 of the FAA states that a district court should order parties to proceed in arbitration if there has been a "failure, neglect, or refusal of any party to honor an agreement to arbitrate." *Genesco* at 844 (quoting *Scherk v. Alberto-Culver Co.,* 417 U.S. 506,

511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). The Second Circuit addressed this issue and found that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Genesco* at 844 (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original)). Likewise, the Supreme Court has interpreted the FAA broadly finding a "liberal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ In light of the above, the Second Circuit has articulated four criteria to determine whether proceedings should be stayed pending arbitration. *Genesco* at 844. The district court must assess each of the following: (1) whether the parties agreed to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement;[6] (3) if federal statutory claims are at issue, whether Congress intended such claims to be non-arbitrable;[7] and (4) if only some of the claims

---

**6.** The Supreme Court has articulated a policy that favors arbitration and federal courts are directed to "construe arbitration clauses as broadly as possible[.]" *Oldroyd v. Elmira Sav. Bank,* 134 F.3d 72, 76 (2d Cir.1998). Accordingly, claims are entitled to a "presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *Elmira,* 134 F.3d at 76. In the case at bar, all of the Plaintiff's claims are employment related and the Agreement specifically covers all employment related claims. There is no question that the type of claims advanced by the Plaintiff are within the coverage of the Agreement.

**7.** In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26

(1991), the Supreme Court addressed the question of the arbitrability of claims under the ADEA and found that the plaintiff in that case was bound by the agreement to arbitrate any claims arising out of his employment. *Id.* at 27–33, 111 S.Ct. 1647. Further, the Supreme Court held that in agreeing to arbitrate a statutory claim, such as an ADEA claim, "a party does not forego [sic] the substantive rights afforded by the statute; it only submits to their resolution in arbitral, rather than judicial forum[.]" *Id.* at 26, 111 S.Ct. 1647.

Likewise, the Second Circuit has held that pre-dispute mandatory arbitration agreements are not unlawful under Title VII. *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 201–05 (2d Cir.1999); *Mahon v. Staff Line, Inc.,* 100 Fed.Appx. 37, 38–39 (2d Cir.2004).

are arbitrable, whether to stay the balance of the proceedings pending arbitration.[8] *Id.* In the case at bar, the only one of the criteria that is in dispute is the first element; whether there is an enforceable agreement to arbitrate. As set forth more fully below, this Court finds that this element, as well as the three unchallenged elements, are satisfied and orders the parties to engage in arbitration.

 When determining whether a contract to arbitrate has been established for the purposes of the FAA, federal courts should apply "ordinary state-law principles that govern the formation of contracts" to decide "whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Pursuant to state contract law, "it is axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." *Feifer v. Prudential Ins. Co. of Am.,* 306 F.3d 1202, 1210 (2d Cir.2002). In New York, the case law provides that parties are bound "by the contracts they sign whether or not the party has read the contract so long as there is no fraud, duress or some other wrongful act of the other party." *Tuskey v. Volt Information,* 2001 WL 873204, at *3 (S.D.N.Y. Aug. 3, 2001), 2001 U.S. Dist. LEXIS 10980, at *9 (citing *State Bank of India v. Star Diamonds, Inc.,* 901 F.Supp. 177, 179 (S.D.N.Y.1995)).

 In the case at bar, the Plaintiff does not contest that she executed the Agreement, but she argues that the Agreement she signed is unconscionable, both procedurally and substantively. An agreement that is determined to be unconscionable under New York law will not be enforceable. *Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 381 (S.D.N.Y. 2002) (citing *Gillman v. Chase Manhattan Bank,* 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988)). The Plaintiff has conceded, both in the Plaintiff's Opposition and at oral argument, that in order for the Agreement to be held unconscionable, this Court must find it both procedurally and substantively unconscionable. *Brennan* at 382 (citing *Gillman* at 10, 537 N.Y.S.2d 787, 534 N.E.2d 824).

 With respect to the alleged procedural unconscionability, the Plaintiff advances four theories. First, the Plaintiff contends that the Agreement is procedurally unconscionable because of the disparity in bargaining power between the Plaintiff, a non-lawyer, individual, and the Defendant, a large corporation. (Plaintiff's Opposition, Page 8). If the Plaintiff's contention were accepted, no non-lawyer, individual could contract with a large corporation without the advice of counsel. The Plaintiff has not advanced any case law in support of this position. To the contrary, the Second Circuit has held that inequality of bargaining power alone does not render an arbitration agreement to be unenforceable. *Desiderio* at 207. This theory of procedural unconscionability advanced by the Plaintiff is not persuasive.

Second, the Plaintiff submits that the Defendant's "application/agreement did not inform plaintiff that she may want to review the agreement with an attorney."

Based on the foregoing, the Supreme Court and Second Circuit have determined that the types of claims brought by the Plaintiff are subject to arbitration and the third element of *Genesco* is satisfied.

**8.** See Footnote # 6 above. Accordingly, all of the claims are subject to arbitration and the Plaintiff does not have any non-arbitrable claims for this Court to consider staying.

Plaintiff's Opposition, 8. However, contrary to the Plaintiff's representation, the Agreement specifically advises applicants that the Agreement and Rules "**affect your legal rights. You may wish to seek legal advice before signing this [Agreement].**" Agreement, 2 (emphasis in original). The plain language of the Agreement refutes the Plaintiff's argument and no procedural unconscionability exists in this regard.

Third, the Plaintiff argues that the Agreement is procedurally unconscionable because it provided that the Plaintiff would not be considered for the job if she did not sign the Agreement. (Plaintiff's Opposition, 8). At oral argument, the Plaintiff phrased this argument slightly differently, arguing that the Plaintiff lacked a "meaningful choice" in signing the Agreement. The Second Circuit has stated that an agreement is "unconscionable when there is 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Desiderio*, 191 F.3d at 207 (quoting 8 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS, § 18:9). However, the Supreme Court and Second Circuit have both held that "conditioning employment on the acceptance of an agreement to arbitrate disputes, including those arising under civil rights laws, is not itself unlawfully coercive." *Williams v. Parkell Prods., Inc.*, 91 Fed.Appx. 707, 708 (2d Cir.2003) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. at 123–24, 121 S.Ct. 1302 and *Desiderio*, 191 F.3d at 204–5). The Plaintiff was not deprived of 'meaningful choice.' She made a calculated decision to accept employment with the Defendant, premised on the condition that employment related disputes would be settled through arbitration, not litigation. Accordingly, this Court finds that the Agreement is not procedurally unconscionable on this ground.

Fourth, the Plaintiff argues that there was procedural unconscionability because the Defendant withheld a key component of the Agreement, a copy of the Rules, from the Plaintiff. (Id. at 8–9). More particularly, the Plaintiff's Opposition claims that the Rules contain "key provisions of the defendant's arbitration agreement [that] may or may not have caused the plaintiff to reject the idea of working for the defendant. We cannot know because the defendant took away from plaintiff the opportunity to make that decision for herself." (Plaintiff's Opposition, Page 9). The Defendant submits that even if all of the Plaintiff's factual allegations (that she never received the Rules, read the Rules or received notice of the modification of the Rules) are accepted, the Second Circuit and district courts within the Southern District of New York have upheld arbitration agreements where the employee signed the agreement, but did not receive a copy of the governing procedural rules. (Defendant's Reply, 5) (citing *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149–50 (2d Cir.2004) (employee who signed arbitration agreement is bound by his signature despite claim that employer did not provide a copy of the procedural rules)); *Ciago v. Ameriquest Mortgage Co.*, 295 F.Supp.2d 324, 329 (S.D.N.Y.2003).

As set forth above, the Plaintiff voluntarily attended the Defendant's job fair. She voluntarily signed the Agreement, even without (she claims) reviewing the Agreement. Although she claims a copy of the Rules governing the Agreement was not provided to her, the Plaintiff never requested a copy of the Rules from the Defendant. The Agreement itself makes it clear that if not provided, the applicant must request a copy of the Rules. Nor did the Plaintiff exercise her right to withdraw

her acquiescence to the Agreement within three days of executing the Agreement. The Plaintiff was hired and worked for the Defendant for approximately six years. At no point in time did she ever request a copy of the Rules. Despite the fact that the Plaintiff claims to have signed the Agreement without reading the Rules and never requested a copy during her six years of employment, she now seeks to benefit by her own inaction. This argument by the Plaintiff also holds no weight and is rejected by this Court.

The four arguments advanced by the Plaintiff have failed to show that the Agreement was procedurally unconscionable; therefore the Plaintiff's claim that the Agreement is unconscionable fails. *See Brennan; Gillman.* The Plaintiff voluntarily signed the Agreement and knowingly accepted employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration. Accordingly, there was no fraud, duress, unconscionability or wrongful act committed by the Defendant in connection with the execution of the Agreement and a valid agreement to arbitrate exists between the parties.

■ Having found the procedural element of an unconscionability claim not satisfied, this Court need not address the Plaintiff's substantive unconscionability arguments.[9] Nor does the Court need to engage in an analysis of any particular provisions of the Rules or Agreement, including without limitation the severability clause. As indicated above, this Court has found the Agreement to be valid. The Supreme Court has held that once a district court determines that the arbitration agreement is valid and the parties have agreed to arbitrate, the arbitrator should determine the meaning of specific provisions of the arbitration agreement at issue. *Howsam, v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *see accord Ciago* at 330; *Stewart v. Paul, Hastings, Janofsky & Walker, LLP,* 201 F.Supp.2d 291, 292–93 (S.D.N.Y. 2002). In other words, the district court's review of the arbitration agreement is limited to "to certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). Thus, in the case at bar, this Court has decided the "gateway matters" and leaves to the arbitrator the decisions with respect to which version of the Rules should apply and the interpretation of such Rules and Agreement.

### III. CONCLUSION:

For all of the foregoing reasons, (a) the Defendant's Motion is granted, (b) the parties shall proceed with arbitration in accordance with the Agreement and (c) this matter shall be stayed pending the completion of such arbitration.

It is so ordered.

---

9. The Plaintiff argued that the Agreement is substantively unconscionable because: (a) the Defendant did not notify the Plaintiff of modifications to the Rules; and (b) the Rules that were in place when the Plaintiff signed the Agreement are problematic because they (i) abridge the Plaintiff's statutory rights and (ii) do not apply reciprocally to the Defendant.