## LYNDON PROPERTY INSURANCE COMPANY

v.

## FOUNDERS INSURANCE COMPANY, LTD.

**Civil Action No. 08–11359–RGS.**

United States District Court,
D. Massachusetts.

Nov. 24, 2008.

Euripides D. Dalmanieras, John A. Shope, Foley Hoag LLP, Boston, MA, T. Michael Leo, Hall Burr & Forman LLP, Maibeth J. Porter, Maynard, Cooper & Gale, P.C., Birmingham, AL, for Lyndon Property Insurance Company.

Bruce M. Friedman, Gerald A. Greenberger, Rubin, Fiorella & Friedman LLP, New York, NY, Mitchell S. King, Prince, Lobel, Glovsky & Tye LLP, Boston, MA, for Founders Insurance Company, Ltd.

*MEMORANDUM AND ORDER ON FOUNDERS INSURANCE COMPANY'S MOTION TO DISMISS*

STEARNS, District Judge.

Founders Insurance Company, Ltd. (Founders) entered a Reinsurance Agree-

ment (Agreement) with primary insurer Lyndon Property Insurance Company (Lyndon). The Agreement required Founders and Lyndon to arbitrate any insurance-related disputes. A quarrel soon arose over the extent of Founders' obligations to Lyndon. As a result, an arbitration panel was appointed. On August 8, 2008, Lyndon filed this lawsuit in the Massachusetts district court seeking enforcement of the arbitrators' order that Founders post $20 million in prejudgment security. The fight now is over whether the choice of this court as the forum for Lyndon's enforcement action is permitted by the Agreement.

Founders moves to dismiss Lyndon's action pursuant to Fed.R.Civ.P. 12(b)(2), contending that the submission-to-jurisdiction clause contained in Article XIX of the Agreement requires that the proceeding be heard in the courts of Missouri. Founders also contends that the Massachusetts district court lacks personal jurisdiction because Founders neither has a legal presence nor transacts business in Massachusetts. Lyndon, for its part, maintains that Article XIII of the Agreement, which provides that the confirmation of an arbitral award may be entered "in any court of proper jurisdiction," trumps the Article XIX submission-to-jurisdiction provision. Lyndon further contends that under the Arbitration Act, 9 U.S.C. § 9,[1]

this court has personal jurisdiction over Founders because of Founders' participation in two preliminary arbitration hearings convened in Boston. A hearing on the motion to dismiss was held on November 13, 2008.

### BACKGROUND

Lyndon is an insurance company organized under Missouri law with a principal place of business in St. Louis. Founders is a reinsurance company organized under the laws of Bermuda with a headquarters in Greenwood Village, Colorado. The arbitration proceeding arises out of a reinsurance agreement between Lyndon, as ceding insurer, and Founders, as reinsurer, that took effect on January 1, 2002.

Under Article VI of the Agreement, Founders was required to deposit in a custodial account "suitable assets in an aggregate amount equal to the reserves on the business reinsured under this Agreement that [Lyndon] has ceded premium to [Founders] on a written basis." According to Lyndon, as of December 31, 2007, the reserve requirement was [ ].[2] The custodial account, however, contained only [ ] (a [ ] deficiency). As of June 30, 2008, the reserve requirement was [ ], but the custodial account held only [ ] (a [ ] deficiency).

On July 13, 2007, after unsuccessful attempts to resolve the underlying dispute,

---

**1.** Lyndon refers to the portion of § 9 that states "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." Lyndon argues that under *Weststar Assocs., Inc. v. Tin Metals Co.,* 752 F.2d 5 (1st Cir.1985), where there is an independent jurisdictional basis for subject-matter jurisdiction over a petition to confirm (such as diversity), it "enable[s] the district court for the district within which the award was made to exercise personal jurisdiction over the parties to the award." *Id.* at 7. *See also Loral Corp. v. Swiftships, Inc.,* 77 F.3d 420,

422 (11th Cir.1996) ("Subject matter jurisdiction for cases [to confirm Federal Arbitration Act awards] must be based upon either diversity of citizenship or the existence of a federal question, and is not dependent upon the location in which the arbitration award was made.").

**2.** The court has redacted all dollar figures in deference to the Confidentiality Agreement entered before the arbitration panel. The parties, who were provided with advance copies of this decision, have not requested any further redactions.

Founders sent Lyndon a written demand for arbitration. On November 20, 2007, counsel for Lyndon and Founders attended an organizational meeting in Boston with the two arbitrators selected by the parties and a neutral umpire. Boston was chosen as the site of the meeting to accommodate the schedule of the umpire. Before the meeting, Lyndon sought an order requiring Founders to post [ ] in prejudgment security. On January 4, 2008, the panel conducted a hearing in Boston on Lyndon's motion. Founders' counsel did not object to Boston as the site of the hearing.

On February 1, 2008, the panel issued a ruling requiring Founders to post [ ] in prejudgment security. On August 8, 2008, Lyndon filed this petition, asserting that Founders had failed to comply with the panel's order "and has evidenced no intent to do so."[3]

The relevant portions of the original Agreement are set out as follows (with appropriate emphasis in bold type):

ARTICLE XIII—**ARBITRATION**

Should an irreconcilable difference of opinion or dispute arise between the parties to this Agreement as to the interpretation of this Agreement, or as to transactions with respect to this Agreement, such differences or dispute shall be submitted to the decision of a board of arbitration composed of two [2] arbiters and a umpire, meeting in St. Louis, Missouri, except as hereinafter provided or otherwise agreed in writing by the parties.

\* \* \*

A majority decision of the board shall be final and binding upon the parties to the proceedings. **The judgment upon the award entered by the arbiters may be** entered in any court of any proper jurisdiction and may be enforced in any such court.

\* \* \*

**The proceedings specified in this Article XIII shall be the sole and exclusive procedures for the resolution of irreconcilable disputes between the parties arising out of or relating to this Agreement;** provided, however, that a party may seek a preliminary injunction or other preliminary judicial relief if, in its judgment, such action is necessary to avoid irreparable damage.

\* \* \*

Notwithstanding any other provision of this Article, in the event that either party seeks, contests to [sic], or acquiesces in the appointment of, or otherwise becomes subject to, any trustee, receiver, liquidator or conservator [including any state insurance regulatory agency acting in such capacity], the other party shall not be obligated to resolve any claim, dispute or cause of action under this Agreement and may elect to bring any action with respect to such claim, dispute or cause in any court of competent jurisdiction in Missouri.

The original Agreement also included, as Article XVIII, a section titled "Replacement Reinsurer," which provided in part:

*ARTICLE XVIII—REPLACEMENT REINSURER*

Notwithstanding the provisions and obligations set forth in this Agreement, it is agreed, upon termination, at the option of the Reinsurer, to permit replacement of the Reinsurer by means of a transfer of portfolio to a replacement reinsurer to be approved by the parties hereto, and such replacement reinsurer shall as-

---

**3.** The evidentiary stage of the proceeding is by agreement of the parties to convene in Colorado on February 9, 2009.

sume all the obligations of the Reinsurer herein from the date of the transfer so agreed upon.

\* \* \*

**This Agreement shall be interpreted and construed pursuant to the laws of the State of Missouri, USA. Reinsurer agrees to submit to the jurisdiction of any court of competent jurisdiction in Missouri, to comply with all requirements necessary to give such court jurisdiction, and to abide by the final decision of such court in the event of appeal.**

Reinsurer hereby designates Ballard Spahr Andrews & Ingersoll, LLP as its true and lawful attorney upon whom may be serviced any lawful process in any action, suit or proceeding instituted by or on behalf of the Company. Notwithstanding the foregoing, this provision is not intended to conflict with or override the obligation of the parties to arbitrate their disputes in accordance with Article XIII hereof.

On April 7, 2003, Lyndon and Founders executed a Second Amendment to the Agreement. Paragraph 6 of the Second Amendment deleted the second paragraph of Article XVIII, which contained the choice-of-law and submission-to-jurisdiction provisions. Paragraph 7 of the Second Amendment moved the choice-of-law and submission-to-jurisdiction provisions verbatim to a new Article XIX under the heading: ARTICLE XIX—APPLICABLE LAW, SUBMISSION TO JURISDICTION & SERVICE OF PROCESS.

## DISCUSSION

■ The rules of contract construction require a court to read a contract as a whole when interpreting a disputed part. Each term of a contract should be given

(as best the court is able) the common sense effect that was intended by the parties. "The presumption in commercial contracts is that the parties were trying to accomplish something rational." *Fishman v. LaSalle Nat'l Bank,* 247 F.3d 300, 302 (1st Cir.2001).

Both Founders and Lyndon put forward plausible, common sense readings of the Agreement's conflicting choice of forum clauses. Founders argues that the intent of the Second Amendment was to grant exclusive jurisdiction to the courts of Missouri to resolve all disputes involving the *interpretation* of the terms of the Agreement (including disputes over the proper choice of forum). Lyndon counters that the intent of the Second Amendment was to correct an obvious error in the original Agreement, which mistakenly inserted the submission-of-jurisdiction clause in an Article intended to deal with the unrelated issue of the appointment of a replacement reinsurer.

Lyndon contends that "[t]he submission-to-jurisdiction clause [of amended Article XIX] is not inconsistent with, and did not modify, the arbitration provision [of Article XIII], because [the latter Article] relates to non-arbitrable disputes." Opposition Memorandum at 12. Under Article XIII, Lyndon continues, a judgment "upon the award made pursuant to the arbitration . . . may be entered in any court of any proper jurisdiction," including Massachusetts.[4] *Id.* at 7. A competing and equally plausible reading of Article XIII is that its venue provision was intended to apply only to final awards (as suggested by the definite article "the" in the phrase "[t]he judgment on *the* award entered by the arbitrators . . . ."), and not to interim orders like the prejudgment order at issue here. It is

**4.** Lyndon does not argue, although it presumably could, that Article XIX places a unilateral obligation on Founders to submit at Lyndon's election to the jurisdiction of the Missouri courts.

also true, as Founders argues, that a reading of the Agreement that is partial to the Missouri courts is intuitively reinforced by the fact that Lyndon is a Missouri-based company, and would have been expected to negotiate for the locating of as much litigation as possible on its home turf.

■■■ The ultimate issue is how the choice of forum provisions of the Agreement, which seemingly conflict, are to be interpreted. What must not be forgotten is that this contract is more than a simple executory agreement—it is an arbitration agreement. Under the Federal Arbitration Act, arbitration is a favored child of the law. It is well established "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This policy confines the role of the federal court in arbitration disputes to issues of arbitrability and the confirmatory (and largely ministerial) approval of an award. In the first instance, it is for the court to decide the validity and scope of an arbitration clause. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). However, "other types of claims, including even some 'gateway questions' that might dispose of the entire claim, are presumptively left to the arbitrator. This category includes 'procedural questions which grow out of the dispute and bear on its final disposition.'" *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 10 (1st Cir. 2005), quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). *See also Nat'l Cas. Co. v. First State Ins. Group*, 430 F.3d 492, 499–500 (1st Cir. 2005); *Shaw's Supermarkets, Inc. v. United Food & Commercial Workers Union, Local 791*, 321 F.3d 251, 254 (1st Cir.2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), quoting *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. 927.

That the issue here is a procedural one involving the proper interpretation of the Agreement's choice of forum clauses is not really a matter of dispute. Lyndon's counsel, when asked by the court at the hearing to distill the crux of the parties' disagreement, frankly stated that

> [w]ell, it's really a substantive interpretation of [the] agreement as to whether Missouri was indeed the submission to jurisdiction provision that the parties applied to the arbitration agreement. And because the arbitration agreement is not the—the arbitration provision is not specific in that regard, because it allows for an award to be enforced in any district court of proper jurisdiction, we think that Missouri is not the appropriate court, otherwise we would not be here.

Tr. at 20.

■■■ The court's own research suggests that the First Circuit's decision in *Richard C. Young & Co., Ltd. v. Leventhal*, 389 F.3d 1 (1st Cir.2004), is the case most on point. *Young*, as here, involved the interpretation of an arbitration agreement's forum selection clause. The district court, while acknowledging that *Howsam* and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), "arguably left it without authority to interpret the forum selection clause," concluded otherwise based on older circuit court case law. *Young*, 389 F.3d at 3–4. The Court of Appeals reversed.

In *Howsam*, the Court held that the time limit rule governing arbitrations

under the rules of the National Association of Securities Dealers was the kind of dispute that did not present a question of arbitrability and was therefore presumptively for the arbitrator. The Court explained that under its precedents, "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide." On the other hand, "the phrase 'question of arbitrability' [is] not applicable ... [to] 'procedural questions which grow out of the dispute and bear on its final disposition' [and which] are presumptively not for the judge, but for an arbitrator, to decide." The dispute between the parties in this case over the location of the arbitration raises not a question of arbitrability but a procedural question and is therefore for the arbitrator, not the court.

*Young,* 389 F.3d at 4 (internal citations omitted). So it is here. The interpretation of the Agreements' conflicting choice of forum provisions is a procedural issue that is for the arbitrators, not the court.[5]

### *ORDER*

Founders' Motion to Dismiss is *ALLOWED.* The issue of the appropriate judicial forum in which Lyndon may seek confirmation of the arbitrators' prejudgment order is remanded to the arbitration panel for decision. The Clerk may now close the case.

SO ORDERED.

---

**5.** The parties do not disagree that their underlying substantive dispute over reinsurance liability is governed by the Agreement (as evidenced by the selection of the arbitration panel).