



## OPINION

No. 04-10-00644-CV

**NCP FINANCE LIMITED PARTNERSHIP**
and NMCapital, Inc.,
Appellants

v.

Humberto **ESCATIOLA**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-19255
Honorable Antonia Arteaga, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  April 27, 2011

REVERSED AND REMANDED

In this accelerated appeal, appellants, NCP Finance Limited Partnership and NMCapital,

Inc. (collectively "NCP"), appeal from the trial court's order on their motion to compel

individual arbitration and stay litigation pending arbitration.  We reverse and remand.

## BACKGROUND

ACE Credit Service, LLC ("ACE") is a registered Texas credit services organization, and

NMCapital is an out-of-state lender and a general partner of NCP Finance Limited Partnership, a

Texas limited partnership. On February 16, 2008, appellee, Humberto Escatiola, obtained a loan from NCP through credit services provided by ACE. On that same date, Escatiola, ACE, and NCP signed a credit services agreement, a loan agreement, a promissory note, and an arbitration agreement. The arbitration agreement states:

> [U]pon the election of either [Escatiola], [ACE] . . . , or [NCP] . . . , any legal dispute between [Escatiola], on the one hand, and ACE and/or [NCP], on the other hand, will be resolved by binding arbitration. . . . (1) NO PARTY MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION . . . ; (2) NO PARTY MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN AN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST [ESCATIOLA] MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.

The arbitration agreement commits any "claim," which it defines as "any legal dispute between [Escatiola], on the one hand, and ACE and/or [NCP], on the other hand," to the arbitrator. However, the arbitration agreement also states: "[A]ny dispute about the validity, effect or enforceability of the prohibitions against class proceedings, private attorney general proceedings and/or multiple-party proceedings . . . *shall be resolved by a court and not by an arbitrator or arbitration administrator*" (emphasis added). Escatiola refinanced the loan three times over the next two months, and he signed identical arbitration agreements on each occasion.

On behalf of a purported class, Escatiola sued ACE and NCP for usury, violation of the Texas Deceptive Trade Practices Act, and violation of the Texas Credit Services Organization Act. NCP filed a motion in the trial court to compel individual arbitration, to strike Escatiola's request for class action certification, and to stay the litigation pending completion of arbitration. The trial court's order on the motion reads, in part: "IT IS . . . ORDERED THAT [NCP's] Motion as to individual arbitration is denied and that the case shall proceed in arbitration and

[Escatiola] may seek class certification therein." The trial court stayed the litigation and appointed an arbitrator.

On appeal, NCP argues the trial court was required to grant the motion as to individual arbitration because (a) the parties' arbitration agreement specifically prohibits class arbitration, and (b) the United States Supreme Court recently ruled in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* that class arbitration may not be compelled absent express agreement of the parties.

## DISCUSSION

Several years ago, the United States Supreme Court held that whether an arbitration agreement forbids a class action is a question for the arbitrator, not the trial court, to decide. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion). In *Green Tree*, Lynn and Burt Bazzle ("the Bazzles") obtained a home improvement loan from Green Tree Financial Corporation ("Green Tree"). *Id.* at 447. The Bazzles and Green Tree signed a contract, which included this arbitration clause: "'All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract . . . *shall be resolved by binding arbitration by one arbitrator selected by [Green Tree] with consent of [the Bazzles]*.'" *Id.* at 448 (emphasis in original). The Bazzles subsequently sued Green Tree in South Carolina state court for violation of the South Carolina Consumer Protection Code and asked the trial court to certify their claim as a class action. *Id.* at 449. The trial court certified a class and entered an order compelling arbitration. *Id.* Affirming the trial court's order, the South Carolina Supreme Court held class arbitration was authorized because the contract was silent on the matter. *Id.* at 450.

A plurality of the United States Supreme Court vacated the South Carolina Supreme Court's ruling, holding that in certain limited circumstances, courts must decide "gateway" arbitration-related matters, "such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Id.* at 452. However, the Court concluded the question involved in *Green Tree*—whether the parties' contract forbade class arbitration—did not fall into that narrow exception because it concerned neither the validity of the arbitration clause nor the clause's applicability to the underlying dispute. *Id.* According to the Court, whether the parties' contract forbade class arbitration was a question of what kind of arbitration the parties agreed to—a matter of contract interpretation and arbitration procedures. *Id.* at 452–53. Given that "[a]rbitrators are well suited to answer" questions of contract interpretation, and that the parties' contract contained "sweeping language concerning the scope of the questions committed to arbitration," the Court held the matter should be decided by the arbitrator, not the trial court. *Id.* at 453.

Expressly relying upon the United States Supreme Court's ruling in *Green Tree*, the Texas Supreme Court also held the arbitrator, not the trial court, must rule on class certification issues. *In re Wood*, 140 S.W.3d 367, 368 (Tex. 2004) (per curiam). In *Wood*, an attorney and three of his clients signed fee agreements providing that all disputes arising from the agreements would be submitted to binding arbitration. *Id.* When the clients sued the attorney over a fee dispute, the trial court ordered the case to arbitration and signed a second order specifically authorizing the arbitrator to decide whether the clients could seek class certification in arbitration. *Id.* The court of appeals issued a writ of mandamus directing the trial court to vacate its second order and determine whether the parties' agreement permitted class arbitration. *Id.* However, the Texas Supreme Court concluded the decision in *Green Tree* was "directly on

point" and held the court of appeals erred in directing the trial court to determine the class certification issue. *Id.* at 369–70. According to the unanimous Texas Supreme Court, "when the contracts at issue commit[] all disputes arising out of the agreement to the arbitrator," the arbitrator must decide class certification issues. *Id.* at 368.

Recently, a majority of the United States Supreme Court recognized *Green Tree* did not garner a majority on the question of whether the trial court or the arbitrator must decide class certification questions. *Stolt-Nielsen*, 130 S. Ct. 1758, 1772 (2010). However, the *Stolt-Nielsen* majority declined to resolve this unsettled question because the parties' agreement expressly assigned the class certification question to the arbitration panel. *Id.* Instead, the Court turned to the question the *Green Tree* Court did not address—the standard to be applied when determining whether a contract permits class arbitration. *Id.* The Court held that "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at 1775 (emphasis in original). Because the parties conceded their agreement was silent on the matter of class certification, the Court found the arbitration panel's certification of a class "fundamentally at war with the foundational . . . principle that arbitration is a matter of consent." *Id.*

Here, the arbitration agreement expressly assigns "any dispute about the validity, effect or enforceability of the prohibitions against class proceedings" to the trial court, not the arbitrator. Accordingly, because the contract at issue here did not commit all disputes to the arbitrator, but rather expressly assigned disputes involving the class action waiver provision to the trial court, the trial court was required to rule on NCP's motion to compel individual arbitration.

Turning to whether the trial court's denial of NCP's motion was correct in light of recent precedent, we must conclude it was not. The clear language of the parties' agreement expressly forbids class certification in arbitration. Because the United States Supreme Court recently held in *Stolt-Nielson* that a party cannot be compelled to submit to class arbitration absent its express consent, the trial court erred by denying NCP's motion to compel individual arbitration and by permitting Escatiola to seek class certification before the arbitrator.

## CONCLUSION

We reverse the trial court's order and remand this matter to the trial court for proceedings consistent with this opinion.

Sandee Bryan Marion, Justice