GRIFFITH, Circuit Judge,
concurring in the judgment:
After more than two years of consideration, three rounds of briefing, and two oral arguments, I agree with the dissent that we have sufficient information to decide this case. But since we cannot reach agreement either as to our authority to hear this case or as to the merits, I reluctantly concur in the remand so as to break this stalemate and allow the case to proceed. I concur only in Part I of the majority opinion, however, not in the rationale on which it relies in Part II to decide that remand is appropriate.
Many of the questions the opinion poses appear aimed at determining whether Dearth may be considered a resident of the United States even though he lives in Canada, in which case he would not satisfy the injury-in-fact requirement of Article III standing to challenge laws that prevent nonresidents from purchasing firearms. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). But a prior panel of this court has already held that Dearth has standing, see Dearth v. Holder, 641 F.3d 499 (D.C.Cir.2011), which binds this panel absent a relevant change in factual circumstances, see LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C.Cir.1996) (en banc) (“When there are multiple appeals taken in the course of a single piece of litigation, law-of-the-case doctrine holds that decisions rendered on the first appeal should not be revisited on later trips to the appellate court.” (internal quotation marks and citation omitted)). Even if Dearth’s standing was still an open question, Dearth has averred, and the government has con *36 ceded, that he is a United States citizen, that he “does not maintain a residence within the United States,” and that he was unable to purchase a firearm in the United States because he could not provide a state of residence on the form the ATF requires him to complete before such a purchase. See J.A. 29-30, 164. Based on these undisputed facts that the government has taken for granted in the six years since Dearth filed his complaint, this case is properly before us.
Other questions posed in the opinion seek to determine where Dearth has previously sought to purchase firearms. Answers to these questions are irrelevant as well. It is true, as the opinion notes, that many states have their own laws that bar nonresidents from buying firearms, see Maj. Op. at 35 & n. 1. The upshot of these state laws, the opinion seems to imply, is that perhaps Dearth will not be able to purchase a firearm even if he prevails in this suit, in which case he would lack standing because his injury would not be redressable by a favorable outcome. See Lujan, 504 U.S. at 561, 112 S.Ct. 2130. But once again, a prior panel has already addressed this issue and determined that Dearth’s injury is redressable. See Dearth, 641 F.3d at 501. As that panel noted, the government never contended otherwise. See id. (“The Government disputes only whether Dearth has suffered a cognizable injury, as the requirements of traceability and redressability are clearly met.”). Despite this, the opinion implies that Dearth may need to show that he has visited Texas in the past or demonstrate to some undefined degree of certainty that he will return there to buy a firearm if he prevails in this suit. See Maj. Op. at 35 n. 1.
I disagree. Even if it were open to us to reconsider this point, Dearth’s injury remains just as redressable now as it was at the time of the prior panel’s decision. Dearth has sworn that he “intend[s] to purchase firearms within the United States.” See, e.g., J.A. 32. And he has noted for our benefit that even as a nonresident, the laws of Texas, Louisiana, and Virginia would allow him to purchase firearms if federal law did not prohibit him from doing so. See Appellant’s Reply Br. at 7-8. Dearth has thus shown that if he prevailed here he would be able to redress his injury by purchasing a firearm in the United States and he has sworn under penalty of perjury that he will do exactly that if federal law permits him. Article III does not require him to allege anything more about his shopping plans or his travel itinerary.*
Satisfied that Dearth has standing to bring this suit, I also believe we have enough facts in the record to decide this case. Judge Henderson agrees. We disagree, however, on the merits. Forced to side either with a position that thinks we must remand for further factual development or with one that decides the issues differently than I would, I choose to break the tie in favor of the former. See, e.g., Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 455, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (Stevens, J., concurring in the judgment and dissenting in part) (abandoning his “preferred disposition of the case” and voting to remand so that there could be a “controlling judgment of the *37 Court”); Screws v. United States, 325 U.S. 91, 134, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (Rutledge, J., concurring) (concurring in the judgment and voting to remand, despite his views on the merits, “in order that disposition may be made of this case”).
Because there will not be a controlling opinion on the merits of the issues in this case, I do not find it appropriate to expound upon the important constitutional questions the case presents. See, e.g., Blair v. United States, 250 U.S. 273, 279, 39 S.Ct. 468, 63 L.Ed. 979 (1919) (“Considerations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of Congress unless obliged to do so in the proper performance of our judicial function.... ”). But I raise just two qualms with the dissent.
The dissent asserts that Dearth may purchase a firearm in Canada and bring it into the United States so long as the firearm itself is “generally recognized as particularly suitable for or readily adaptable to sporting purposes.” Dissent at 44. That is incorrect. Although the statutes the dissent cites may allow for such transport, see 18 U.S.C. §§ 922(l), 925(d), federal regulations bar it, see 27 C.F.R. § 478.111 (“[N]o firearm, firearm barrel, or ammunition may be imported or brought into the United States except as provided by this part.”); id. § 478.115(d)(1) (excepting from section 478.111 certain firearms only if the nonresident intends to use them “for legitimate hunting o.r lawful sporting purposes”). Though the statutes, as the dissent rightfully notes, “turn on the nature of the firearm, not its owner’s purpose,” Dissent at 44, the regulations do just the opposite.
The dissent sees no problem because regulations cannot trump statutes. Dissent at 44 n. 7. But Dearth faces real-life consequences as a result of the way the “regulations are interpreted and- enforced in practice,” Dissent at 44 n. 7, regardless of whether a court might one day invalidate those regulations. So long as 27 C.F.R. § 478.111 remains in force, any firearms Dearth purchased abroad will be subject to seizure and forfeiture if he attempts to bring them into the United States for self-defense. See 27 C.F.R. § 478.152. Yet the dissent suggests that the burden Dearth faces is somehow lessened because he has “ample alternative means of exercising” his rights. Dissent at 44. But mark what Dearth must do to bring a firearm purchased abroad into the United States to defend himself: He must carry that weapon over the border, have it seized, argue to a judicial or administrative tribunal that the seizure was improper because the regulations are inconsistent with the relevant statutory text, and then keep his fingers crossed that the tribunal agrees. I fail to see how an alternative that requires breaking the law and then seeking vindication through litigation lessens any potential burden.
The dissent also suggests that Dearth lacks standing to challenge “the ban on rental or loan of a firearm” to nonresidents. Dissent at 48. I disagree. The challenged statutes do not contain a “ban on rental or loan of a firearm.” One of the statutes bans a nonresident from “receiving] any firearms,” see 18 U.S.C. § 922(a)(9); while the other bans licensed firearm dealers from “selling] or delivering] ... any firearm to any” nonresident, see id. § 922(b)(3). That second statute, section 922(b)(3), excepts any dealer who rents a firearm to a nonresident— thus permitting rentals in a narrow set of circumstances. Dearth attempted to “receive” a firearm by asking a licensed dealer to “sell” one to him and was turned *38 away because he is a nonresident. The statutes he challenges have thus caused him to suffer a “concrete and particularized” injury sufficient to satisfy constitutional standing requirements. See Lujan, 504 U.S. at 560, 112 S.Ct. 2130. The Constitution does not require Dearth to suffer an injury in every imaginable application of the statute. Cf. Dearth, 641 F.3d at 502 (holding that Dearth has standing because “the challenged provisions have ... thwarted [his] best efforts to acquire a firearm”). Had the statutes instead banned the purchase, rental, or loan of a firearm (or the sale, loan, or rental of one by a dealer), then this would be a different case, and Dearth would have standing to challenge only the prohibition that injures him. But since Congress chose a blanket ban on “receiv[ing]” and “sell[ing]” a firearm, and Dearth suffered an injury due to those restrictions, he has standing to challenge both statutes.
Finally, though I think a remand is unnecessary, I do agree that the record could be better developed. It is not entirely clear, for instance, whether Dearth intends to purchase firearms that he can use interchangeably for both sport and for self-defense, or whether he has in mind different firearms uniquely suited to each activity. I believe there is enough in the record to infer the answer to that question, but perhaps further factfinding on remand.will eliminate the need for inferences. Dearth also notes that he plans to store his firearms at his parents’ house in Ohio. Nothing in the record, however, suggests that his parents have consented to that plan. I leave it to the district court to settle these details, along with’ any others it deems appropriate.

 I also note that the opinion does not ask Dearth to identify the county or city in which he previously tried to purchase a firearm (or would in the future), even though those jurisdictions may have laws or regulations prohibiting the sale of firearms to nonresidents. The reason that we do not need that information, of course, is that the Constitution does not require it — just as it does not require him to specify in which state he previously attempted to buy a gun (or where he will if allowed).